Mr. Justice Jambs
delivered the opinion of the court.
It appears by the bill of exceptions that the defendant is a married woman, living with her husband ; that, at the time of the transaction on which this suit is based, she owned, as her separate estate, a house and lot on Sixth street in Washington; that in the early part of the year 1877 there were large dealings in furniture between plaintiff and defendant, and that upon settlement, of that account a balance of $160 was due to plaintiff'; that in July of that year defendant applied to plaintiff for a further credit; that she stated to plaintiff at that time that she was the owner of a house on Corcoran street, in this city, and of other property; “that she received three hundred dollars a month rent for her Sixth street house, and that she would pay the plaintiff fifty dollars a month out of such rent until her account was squared; ” that “ on these representations, goods of the value of $311.27 were then sold to her ; ” that “ part of the goods thus sold, comprising a Brussels carpet and some minor articles, charged at $125, were delivered at the Sixth street *119 house, and the balance was delivered at the house on Corcoran street.”
“It was shown that at the time of the sale and delivery •of the furniture, the defendant had a parol agreement for the purchase of the Corcoran street house, and was in occupation thereof, but the purchase of the property was never perfected by her. Subsequently to July, 1877, the defendant paid on the account $820, leaving still due $151.27.” It is stated by the bill of exceptions that this was the whole ■of the evidence offered at the trial.
Thereupon the defendant prayed the court to instruct the jury: 1st. That “ the plaintiff is not entitled to recover in this suit for any furniture sold for the use of and delivered at the house on Corcoran street, there being no proof that-said house was the separate estate of the.defendant.” 2nd. That “the purchase of household furniture by a married woman, living with her husband, which is not necessary to the beneficial enjoyment of her then existiug separate estate, is not a contract in a matter having relation to her sole and separate estate.” 3rd. That “ a married woman, living with her husband, cannot render herself personally liable on an oral contract for the purchase of household furniture which is not necessary to the beneficial enjoyment of her previously existing separate estate.” All of these prayers were refused and exceptions were taken.
After refusing these prayers, the court charged the jury .substantially:
“That if they believed from the evidence,that sheathe •defendant) bought the goods on the credit of her separate estate, and so stated at the time, it is immaterial where they were delivered; and if the defendant, being the owner of .separate estate, purchased this property, stating to the person from whom she bought that it was for her separate estate, it was enough, and she is responsible in this action. .She is just as liable for a false and fraudulent statement as for a true one.” To this instruction defendant duly excepted.
It is convenient to state generally the conclusions of the majority of the court upon the facts presented by the bill of *120 exceptions, and to consider afterwards how far the rulings at the trial conform to them.
Section 727 of the Revised Statutes for this District define the status of what is there called the “sole and separate property” of a married woman, and section 728 states her power of control over it. The effect of one of these provisions is to absolve the property itself, and of the other to absolve the wife, as owner of it, from the control of the husband. She is made competent to act, in her character of' proprietor, just as any other proprietor may act. Not only may she give away, sell, lease, or lend her separate property, but she may charge it with any kind of lien, and she may do so by the same acts or contracts -which would operate in-the case of any other proprietor. If the act had stopped there, a married woman’s contract power, absolute and complete as it would have been within its limits, would nevertheless have been strictly limited to control over the res known as her separate property; and she would have remained, in all other respect's, under the disabilities imposed upon her by the common law. But Congress went further, and, in addition to absolute contract power in cases where-her separate property was the subject-matter of the contract, gave her, in the next section, a like power in certain other defined cases, where the subject-matter of the contract was not her separate property, but something “ having relation” to it. In respect to this matter, also, she was-empowered by the statute to make a contract, although it was a matter in which previous to such contract she had no-interest or right.' The common law was altered by the-statute only to this extent, and in matters not having such “ relation,” married women in the District of Columbia were-left as they had been placed by the common law. As this-is a question of legal capacity, the question whether the alleged contract is about a matter having the required relation, is necessarily a question of law, and addresses itself to the court. In the cases which have heretofore arisen under this statute, this question has been so treated. We take the rule, then, to be this, that when the statute gives to a mar *121 ried woman absolute contract power in a matter “ having relation to her sole and separate property,” it contemplates, first, the existence of something which is capable of being regarded, either at law or in equity, as her sole and separate property ; and, secondly, that the matter shall have relation to that property. We do not mean that, in ascertaining the existence of a separate property to which the matter of contract must have relation, the question whether her title is a good and valid one will be tried. It is enough to say for the present that there must not be a total absence of all right to claim as her property the property to which the matter in contract is alleged to have relation. In such case the matter claimed to have relation cannot be held, within the meaning of this statute, to be a matter having relation to her sole and separate property. It is obvious that this power to contract in relating matters was given in order that she might have the largest and completest enjoyment of her actual property. In order that she should have this, it was not enough that she should merely be able to dispose of that property; she must be able to make contracts which secure to her the full use and enjoyment of it while she holds it. But the incidental or relating power is not to be construed to apply where the principal power cannot. In giving her power to contract in matters having relation to her separate property, Congress cannot have intended that she might exercise it in cases 'where she had nothing over which she could exercise the disposing power given by the previous provision of the same statute. It could not have been intended, by this additional contract power, to secure or enlarge her enjoyment of what she could not pretend to have at all. The whole statute must, of course, be construed together; and as the provision giving her absolute control over her separate property contemplates the actual existence of such property, so the provision giving her power to contract in matters relating thereto contemplates the same thing. Such matter must relate to something which comes within her power of direct control. Let us apply these principles to the facts of the case before us.
*122 Undoubtedly the furnishing of a house belonging separately to a married woman is a “ matter having relation ” to her separate property within the meaning of this statute, and this court has so held. Without power to contract in such a matter she could not enjoy, as the statute intends she shall, the full benefit of proprietorship. She could own and sell, but could not use, her house. But does the defendant’s purchase of furniture for the Corcoran street house come within this principle ? Can that house be treated as in any sense her property, so that another matter may have the relation to it intended by the statute ? Did she acquire even a pretence of title by the alleged executory contract for its purchase ? We are of opinion that the so-called contract was not, as to either party, a contract at all.
The' statement of the bill of exceptions, that the defendant “ had a parol agreement for the purchase of the Corcoran street house, and was in occupation thereof,” is imperfect. It does not show that she had paid for the house, and only lacked a conveyance to perfect her title. We must suppose, therefore, that there was only a promise on one side to sell and on the other to buy, and that Mrs. Garland’s promise to purchase was the consideration of the promise to sell. This presumption is confirmed by the fact that the plaintiff took pains to prove that she was in possession. It is not shown that she entered under the agreement of sale, and it is immaterial whether she did so or not. Part performance of a contract which both parties ai’e competent to make may relieve the party performing of the operation of the Statute of Frauds, and thus enable him to insist upon performance on the other side ; but this defendant’s part performance of a promise which the law disabled her to make would not bind her to a complete performance, or make her promise valid. She could not become a legal promissor by acts if she could not by a written and express promise. This would be to make her competent to promise, because she pretended to have that power. Legally, then, there was no promise to purchase the Corcoran street house.; the promise to sell was without consideration and could not be enforced. *123 In other words, there was no contract for the sale and purchase of the Corcoran street house. So familiar a principle hardly calls for the citation of authorities, and we shall refer to but one. “ Courts of equity,” says Story (Eq. Jur.,787), “ will not carry into specific execution any merely nude pacts or voluntary agreements, not founded upon some valuable or meritorious consideration ; nor between parties not sui juris ■or competent to contract, as infants and fem.es covert.” See, also, Story’s Eq., sec. 723.
It is objected that, in applying this clause of the statute, the court will not consider whether the property, to which another matter is said to relate, is held by a good title* That proposition, as stated, is correct, but it is not involved in this case. This defendant had no pretence of title, inasmuch as her claim of equitable title must rest upon an ex-ecutory contract which the law disabled her to make, and which she could not possibly enforce. She was simply a stranger to what is alleged to have been her separate property.
A pretence of separate property has been made, however, upon another ground. Tt was suggested that, being lawfully in possession, she could not be dispossessed by the owner without thirty days’ notice ; that she may be said, therefore, to have a term in the premises to that extent; that such a term was her separate property, and that the furnishing of •tKe house had relation to her right to possess it for this term. It is not necessary to consider here whether a married woman who takes a lease of a house, and thereby acquires a term, may contract for the furnishing of that house as a matter having relation to her property in the term. It is enough to say that no term is shown here. The thirty days’ notice is a limitation upon the landlord’s remedy, and the occupation on sufferance has not the quality of a term. It is not assignable ; it has none of the traits of property, and therefore cannot be treated as separate property of a married woman.
It was also urged in argument that, as the furniture for the Corcoran street house was sold on the strengh of her as *124 surance that it was her separate property, she is estopped to deny such ownership. We have already said that this statute gives to a married woman power to make certain contracts when she actually has separate property, and has not given, it when she merely preténds to have such property. To say that she must be deemed actually to have separate property by reason of an estoppel of this kind, is merely a misapprehension of the principle of estoppel as applied to estates. This is a question of legal capacity, and a fraudulent pretence that the capacity exists cannot create it. The case in which she has power to incur a personal obligation does not come into existence by operation of an authorized attempt to incur it.
We have said that a married woman may charge her separate property with a lien, and that she may do so by the same acts or contracts which would operate in the case of any other proprietor ; and it has been suggested that, upon this principle, the defendant’s promise to pay fifty dollars a month out of the rents of her Sixth street house may be treated as an appropriation of, was charging a lien upon those rents, in consideration of the sale to her. If that be so, such a charge cannot be enforced in this action for the price of the goods. At law such a promise can only be treated as a mere promise to pay money; and a married woman’s mere promise to pay for that which does not relate to her separate property cannot be enforced. Whether a charge upon defendant’s rents could be enforced in equity, we need not decide.
With these views we must reverse the judgment,